On Rehearing.
(Feb. 29, 1904.)
MONROE, J.
We repeat, with emphasis, that the reasons assigned by the minority of the family meeting, consisting of the three relatives of the minors, for opposing the retention of the mother as tutrix, are not supported by the facts. The rehearing was granted in order that the court might further consider the questions of the necessity and effect of action by a family meeting in a case such as this, and whether the meeting, as herein held, was legally constituted. The law bearing more immediately upon these questions is to he found hi the following articles of the Civil Code, to wit;'
•‘Art. 254. If the mother, who is tutrix of her children, wishes to marry again, she must, previous to the celebration of the marriage, apply to the judge in order to have a meeting of the family called for the purpose of deciding whether she shall remain tutrix. If she shall neglect to call such meeting, she shall, ipso facto, be deprived of the tutorship.”
“Art. 281. Family meetings, in all cases in which they are required by law, * * * must be composed of at least five relations, or in default of relations, friends of him on whose interests they are called upon to deliberate.”
“Art. 284. The appointment of the members of the family meeting shall be made by the judge. * * *”
“Art. 291. The officer before whom the,family meeting is held must make a particular proces verbal of the deliberations, cause the members of the family meeting to sign it, if they know how to sign, sign ifhimself, and deliver a copjr to the parties that they may have it homologated.”
The purpose of this law is to secure for the minor a friendly supervision of his person and estate, and the preference given to his relations in the matter of the composition of family meetings to be held in his behalf is based upon the assumption that, by reason of the ties of consanguinity or affinity which should bind them to him, they *957 are likely to serve him more effectively than persons not so connected. Upon any question required, by law to be submitted to the family meeting, it is obviously as necessary that the meeting should act as that it should assemble and deliberate, and, such action being necessary, the decision of the judge without-it would be unauthorized. To hold, however, that a family meeting convoked in the interest of a minor is, under all circumstances, to be dominated by his relations, or that its action is not subject to review, would be to assume that the lawmaker has overlooked the possibility that relations may be incompetent or unfriendly, and may by their action defeat the purpose for which they are assembled—an assumption which is unauthorized, since the possibility mentioned is guarded against by those provisions of the law which leave it to the judge (1) to determine the maximum number of members of which the meeting shall be composed; (2) to appoint the members; and (3) to homologate the proceedings, or refuse to homologate them, as he may deem best.
From the report of the case of State v. Pitot, 2 La. 537, it appears that a meeting of the family and friends of certain minors had been convoked to consider the demand of their tutrix to substitute a special for a general mortgage, their only duty being to determine whether the property offered was of sufficient value; that “a portion” of the members were in favor of acceding to the demand; that a majority, however, opposed it, three of them declaring “that the property of minors was a thing sacred, which could not be touched, and that, if the mother wished to sell, she might do so, subject to the mortgage,” and the fourth declaring his willingness to accede to the demand, “provided all the rest of her property remain bound.” It further appears that a second meeting, composed of the same persons, was called, with like result; that the tutrix thereafter applied to the judge to accept the special mortgage, or else to convoke another meeting, to be composed of different persons; that, upon his refusing her application, she applied for a writ of mandamus to compel him to grant it; that, in denying the writ, this court held that the family meeting had practically refused to act; that action by a family meeting was an indispensable prerequisite to action by the court; that the court a qua had not exhausted its power in the effort to obtain action by the family-meeting; and that, so long as there was a possibility of obtaining action upon the question involved by those to whom the law gives a preference, it could not be submitted to-the decision of others. “Whether,” said the-court “after all the means which are in the-power of the court of the first instance to-compel the family meeting to act on the matter submitted to them have been exhausted, and no result can be obtained, there is an authority to pass over the relations and call in friends, is a question we are not called on at present to decide.”
It seems apparent from this that the judge had exercised the authority vested in him with respect to determining the number and personnel of the family meeting, and that the meeting was composed of more than five persons, though they were not all relations of the minors; and it will be observed that the questions of his authority to set aside a decision prejudicial to the interest of the minors, and to submit the matter at issue-to a meeting differently composed, or to exclude the relations for incompetency or unfriendliness, whether originally or after setting aside their action, were not in the case. These questions have, however, been considered in other cases. In the matter of Estate of Marionneaux, 28 La. Ann. 427, it appeared that a family’meeting had approved an agreement whereby the tutrix had consented to release, in part, a debt in which her minor child was interested, whereupon, at her instance, another meeting was convoked, which disapproved of the agreement. The debtor prayed for the homologation of the action of the first family meeting, and opposed that of the second. This court said: “Why any family meeting should suppose-that it was to the advantage of the minor to reduce from $9,000 to $3,000 this debt, is not easy to imagine. But, whatever may have been their motive for their advice, the tutrix did not act on it; but, on the contrary, she caused another family meeting to be convoked, who advised against the act. It is contended that the second family meeting-had no power to revise the action of the-first. * * * If the probate court, in its discretion, saw fit to appoint a second family *959 meeting to give their advice touching the interest of the minor, it was certainly competent for the family meeting to do so, without reference to what had been done by any former family meetings, and, on application of the tutrix to have the deliberations of the last family meeting confirmed, the court could confirm or reject it as, in its judgment, was proper.” The judgment of the trial court granting the prayer and maintaining the opposition of the debtor was accordingly reversed, and there was judgment homologating the action of the second family meeting.
In the Interdiction of Bothick, 43 La. Ann. 547, 9 South. 477, it was held that the question of the selection of a curator for the interdict should be submitted to a family meeting, and that the “judge will next have to act on the recommendation, in the exercise of his sound legal discretion.” ' Thereafter, in the same case, a family meeting was convoked; and, although there were near relations and connections within the prescribed limits, the judge a quo, having reason to believe that they were likely to pursue their own interests, rather than that of the interdict, excluded them, and appointed eight friends, and, the eight so appointed failing to agree, appointed a ninth. The action of the meeting, as so constituted, was opposed on the ground, among others, that the relations were illegally excluded; and from an adverse judgment the opponents appealed to this court, where the chief justice, as the organ of the court, said:
“Articles 281 and 282 of the Code are merely declaratory of a principle. They look to a general rule, but do not attempt to' write out of the articles the exceptions to the same which may result from the very nature and reason of things. The theory of the articles is that the nearest relative and connections of minors, being bound to them by special and direct ties, would take a more lively and earnest interest in their welfare than would strangers, or even friends. * * * A family meeting composed of persons unfriendly or hostile to a minor, or evidently pursuing their own interests as their first motive and consideration, would outrage the purpose and spirit of the law.” And the action of the district court was sustained. Interdiction of Bothick, 44 La. Ann. 1037, 11 South. 712.
In the Succession of Fried, 106 La. 279, 30 South. 839, the complaint was that the family meeting was composed mainly of friends, although there were relatives who were not called, and no good reason was assigned for their exclusion. Mr. Justice Breaux, speaking for the court, said: “In the Bothick Case, 44 La. Ann. 1037 [11 South. 712], the court held that the judge not only has the legal discretion, but that it becomes his duty, to exclude from a family meeting relatives who are hostile to a minor, or are evidently pursuing their own interests, but, not, however, without some reason prompting the exclusion. As in the cited case, we are not disposed to restrict the judge’s authority, although we think it imperative not to hold as legal a family meeting composed of strangers, when no notice has been given to the relatives.”
The learned counsel for appellants in the case now under consideration, referring to article 281 of the Civil Code, say:
“The use of the word ‘default’ shows not only that the relations are entitled to the preference, but also that friends are called in simply to make up the deficit in the number of relations that would be necessary to constitute a legal family meeting. In other words, our contention is that, where there are five relations, there is no default of relations, and none can legally be created, and the family meeting must be composed exclusively of relations; where there are * * * three relations, there is a default of only two, and only two can be added; where there are no relations present, there is a default of only five, and the family meeting must be composed of five friends. The power of appointing more than five, which is vested in the judge, appli.es solely to the matter of appointing relations, whilst his power in the matter of appointing friends is limited by the plain provisions of the Code to the contingency which arises when there is an actual default of relations, and the number of friends that he can appoint can never exceed the actual deficit.”
This argument ignores the fact that, in establishing the minimum number, the law leaves it to the judge, so long as he does *961 not fall below that number, to determine of how many members the family meeting shall be composed; and it would require us to hold that where there are no relations, where there are not so many as five, and where there are just five, the words “at'least,” as used by the lawmaker, must be eliminated, or construed to mean “neither more nor less than five,” and that only in eases where there are more than five relations available originally can the judge order the meeting to be composed of a greater number of persons. The law, however, makes no such distinction. On the contrary, it reads “Family meetings, in all cases in which they are required by law, * * * must be composed of at least five relations, or in default of relations, friends,” etc.; and, transpose the language as we may, it is impossible to escape the idea that whilst it fixes the minimum number, and contemplates that the meeting shall be composed, by preference, of relations, save, as we have seen, where there are good reasons to the contrary, it leaves the maximum number of members to be determined by the judge. Thus we might say “family meetings in all cases must be composed of relations, or of friends, in default of relations, and of at least five members,” or “family meetings in all cases must be composed of at least five persons, relations, or, in default of relations, friends,” and in either case the result is thp same, for in either case the judge must decide whether the meeting shall be composed of the smaller number, as provided by the law, or the greater number, as left by the law to his discretion. If we make the article read, “Family meetings in all cases * * * must be composed of at least five relations (and, at most, of the number which the judge may determine), or, in default of relations, friends,” the conclusion thus stated becomes a trifle more obvious, since there could be no reason why the judge, acting-under a statute couched in such language, should not exercise the discretion thus specifically vested in him, and determine whether the meeting should consist of five members, or a greater number; and yet, the meaning of the language thus used, as a matter of reasonable interpretation, is exactly the same as that of the language used by the lawmaker, the words which have been added being as necessarily understood in the reading of the statute as though they had been written therein. In the case at bar, the judge having convoked a family meeting, to consist of nine members, and there having been but three relations who were eligible, there was a default of relations, to the extent of six members, and that number were properly appointed from among the friends of the minors.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, at the costs of the appellants.
NIOHOLLS, 0. J., and PROVO STY, J„ dissent.